6r 387
48 270

THE COMMISSIONERS OF THE EXCHANGE AND BANKING COMPANY OF NEW ORLEANS *v.* ENOCH R. MUDGE and another.

A bank will not be considered as insolvent, merely because it has gone voluntarily, or been forced into liquidation under the act of 14th March, 1842, relative to the liquidation of banks. The provisions of the act do not authorize such a presumption, nor contemplate the insolvency of the Bank as a cause for the forfeiture of its charter; the charter may be forfeited by a violation of its provisions, without the Bank being insolvent.

It is only when the whole amount of the capital stock of a bank, together with its assets, is insufficient to meet its liabilities, that it can be said to be insolvent.

The provision of the act of 26 March, 1842, which declares " that nothing contained in the act to provide for the liquidation of banks, or other laws of the State, shall be so construed as to deny to any persons having notes to pay in banks in liquidation, the right of paying said notes in the bank notes of said liquidating banks ;" though it mentions only *notes*, should, by a liberal and fair construction, be extended to all debts due to the banks, though not in the form of notes. The provision of the second section of the act of 5 April, 1843, " that it shall be the duty of each of the banks of the State, at all times, to receive in offset or part offset of debts due to it, its own debts when liquidated and past due, whether for circulation, deposites. or arising from any other source whatever, and whether such bank be, or be not in liquidation, and without reference to the date at which the debtor offering such transfer may have acquired the claim by him offered in offset," may be considered as declaratory of the former intention of the legislator.

APPEAL from the District Court of the First District, *Buchanan*, J. The petitioners state, that the defendants are indebted•to them, as Commissioners of the Exchange and Banking Company of New Orleans, in the sum of $6500, for rent accruing from the

10th January, to the 10th March, 1843, under a contract by which the defendants, on the 20th April, 1840, leased from the late corporation, known as the Exchange and Banking Company, the St. Charles Hotel, for five years, from the 1st October, 1840, binding themselves to pay a rent, at the rate of $26,000 per annum, payable in monthly instalments, commencing on the 10th of November, and ending on the 10th of July. The answer avers, that the lease was entered into with the Bank while yet in full operation as a bank of discount and circulation, long before it was put in liquidation under the act of 1842: that at the time the rent claimed became due, the defendants were, and that they still are owners of certain notes or obligations in writing of the Bank, commonly called bank notes, issued by the Bank under and by virtue of its charter, forming a part of the circulation of the Bank, to an amount greater than the rent claimed in the petition; which notes are annexed to the answer, and alleged to have been tendered to the plaintiffs before suit. The respondents aver that they are entitled to compensate the notes against the plaintiffs' demand.

The plaintiffs offered in evidence the lease, and the record of the case of The State v. The Exchange and Banking Company, putting the Company in liquidation. It was admitted, that the defendants owned and held the notes described in their answer; that they had tendered them in compensation to the plaintiffs, before the suit was commenced; that the notes were issued and put in circulation by the Bank previous to its being put into liquidation, but that they came into the possession of the defendants after that event. It was also admitted that the act of 5th April, 1843, relative to the banks, was published in the official State Gazette, on the 11th of April, 1843. The plaintiffs having obtained a judgment below, the defendants appealed.

L. Peirce, for the plaintiffs. The record contains this evidence that the Exchange and Banking Company was insolvent. In the proceedings on behalf of the State against the Company, the Attorney General, in his petition, avers that the affairs of the Company have been so mis-managed as to reduce said corporation to a state of insolvency; that on account of the insolvent circumstances of said Bank, and the mismanagement of its affairs, it is

necessary for the protection of the creditors, that all its assets and property should be sequestered, and placed in the possession of the Board of Currency, according to the 16th section of the Act of February 5th, 1842.

The judgment of the court recites what took place, to wit, that the defendants admitted (in open court) the allegations of the plaintiffs' petition, and that it was upon the facts alleged in the petition that the forfeiture was ordered.

There must be a *presumption* of *insolvency* whenever any of the *acts* or omissions expressed in the law of 1842, as causing a forfeiture of the charter, occur. If the Bank does not pay in gold and silver, it is because she cannot. If she has property she would sell, mortgage, or pledge it, to save herself. Her not doing so is proof of her present insolvency. It is for the other party to destroy the presumption so raised, and to prove that the assets are sufficient.

As to any balance due on stock, to the plaintiffs, there is nothing in the record on the subject ; and the stock must be presumed to have been paid by the stockholders because due, unless the contrary be shown.

It is not denied that, *in tiempo inhabil*, and much more so, after failure, no alteration can be made in the situation of the creditors of an insolvent, so as to give any advantage. *Bossier's Syndics v. Belair et al.*, 1 Mart. N. S. 481. 6 Ib. N. S. 67. 2 La. 84.

The law of 1843 is prospective. Civil Code.

The debt was due before it was promulgated. The sum of $6500 now claimed, was sued for before the law was passed. Where a law was to be passed, allowing individuals to purchase claims against insolvent estates, and to compensate them against debts due by them, would the court apply it to a case of insolvency already opened ; where the *concurso* was established ? No. Because the creditors' rights are already fixed, and one creditor shall not take advantage of the others.

Every law is prospective.

"*Partout où la rétroactivité des lois serait admise, non-seulement la sûreté n'existerait plus, mais son ombre même.*

*Il est des vérités utiles qu'il ne suffit pas de publier une fois, mais qu'il faut publier tonjours, et qui doivent sans cesse frapper*

*l'oreille du magistrat, du juge, du législateur, parce qu'elles doivent constamment être présentes à leur esprit."*

" *Le Code Civil·a eu soin de répeter, art. 2: la loi ne dispose que pour l'avenir ; elle n'a point d'effet rétroactif."*

*Portalis, Exposé des Motifs du Tit.* 1. *du Code Civil, cited in Merlin Répertoire, Tit. Effet Rétroactif. Code L.* 7, *De Legibus.*

At the time of the passage of the law of 1843, this debt was due, was sued for, and under our laws was payable in specie ; and had been taken away from a formerly existing corporation, known as the Exchange Bank, and had been given to the mandataries of the creditors of the public, who were interested in an equal distribution of the effects, and in the termination of the mismanagement which had led to insolvency.

*Grymes,* for the appellants. While the Exchange and Banking Company was in the full exercise of its franchises and privileges as a bank of discount, deposit, and circulation, the defendants leased of them for a term of years, the St. Charles Hotel in the city of New Orleans, at the yearly rent of twenty-six thousand dollars, as appears by the lease dated the 20th of April, 1840. The Bank was afterwards put in liquidation, under the act of the 14th of March, 1842. The defendants, after the Bank was placed in liquidation, became the holders of the bank notes which formed a part of its circulation, to the amount of the rent claimed in this suit, as set forth in their answer.

They tendered these notes in payment of the rent claimed in this suit. They were refused by the Commissioners, and the defendants have pleaded the same in compensation of the demand of the plaintiffs for the rent due.

The only question presented for the consideration of the Court is, can the bank notes held by the defendants compensate the plaintiffs' demand for rent under the lease ?

This right is resisted by the plaintiffs, because of the presumed insolvency of the Bank, inferred from the fact of its being placed in liquidation.

The defendants insist upon this right, because in no part of the act (see laws of 1842, page 234,) is the insolvency of a bank contemplated as a cause of the forfeiture of its charter, or of placing it in forced liquidation. An attentive examination of the act must

result in the conviction that the Legislature has studiously avoided the use of the term *insolvency,* or any other expression which could induce the belief that any such state of things was in its contemplation.

The first section of the act describes for what causes the charter shall be forfeited, and the forced liquidation take place. Its language is : " That, whenever any bank of this State, located in the city of New Orleans, by any act of *omission, or violation* of law, shall have incurred the forfeiture of its charter, &c." The second section provides for the voluntary liquidation. It declares that when a petition shall be presented by the Board of Directors, or six stockholders of the Bank, setting forth, that " the charter of such bank has been forfeited, *or that from the reduction of its capital,* such corporation no longer affords a reasonable security, &c." And in prescribing the mode of proceeding, the stockholders alone are to be called to deliberate upon the expediency, or propriety of surrendering the charter. If a state of insolvency was in the contemplation of the Legislature, and such proceedings were designed, in fact, as proceedings in bankruptcy or insolvency, it would certainly be more consonant to justice, and to the jurisprudence and practice of the State, to call the creditors in to a share in the deliberations, and the future management, and administration of the property of the Bank.

In every part of the act, the terms, *forced,* and *voluntary liqui-dation* are used, as if purposely to distinguish the case from one of insolvency, or forced, or voluntary cession of goods. See the 8th and 9th sections of the act.

The 26th section provides for the distribution of the surplus funds among the stockholders after paying all the debts of the bank.

The language of this section is relied upon as conclusive to show, that such proceedings were never contemplated or designed by the Legislature, as proceedings in insolvency, or as a *cessio bonorum.*

The proviso of the 29th section shows, that the interest of the State and the stockholders were alone in contemplation of the Legislature ; and creditors are no where mentioned in the act, but in relation to the payment in full of their claims.

But suppose that the defendants should be in error, as it re- gards their first point, just stated.   They are the holders of the notes set forth in their answer, which are a part of the circulation of the Bank ; and they contend, that by a fair interpretation of the law, they are entitled to the benefit of compensation.

The law clearly contemplates the notes of the Bank, in circu- lation, as a debt of the highest dignity and privilege.   The lan- guage of the 16th section cannot have any other meaning.   The commissioners are directed to proceed to redeem them as *speedily* as *practicable*, and to accomplish it, they are authorized to borrow money at an interest of ten per cent, per annum, and to mortgage or pledge the property of the Bank for such loan.   Surely it is less onerous.to redeem them by receiving them in payment of debts due to the Bank, than to borrow money for the purpose, on mortgage or pledge, at a high rate of interest, which, from the letter of the law, as well as its spirit and meaning, the Commis- sioners are bound to do, if they cannot be redeemed in any other manner.

This preference and privilege in favor of the circulation, is again reiterated, in equally clear language, in the 27th section of the act, which provides that when any bank shall have paid its deposites and circulation, or has deposited the amount thereof in some other bank, or has made an arrangement with another bank to pay them, then the whole management of the bank shall be given up to the stockholders, without regard to its other liabilities, *its capacity* to pay its other creditors, or in any way providing for, or protecting them ; thus clearly showing the all absorbing solici- tude of the Legislature was for the *circulation* and deposites. This view of the law might be supported by various reasons of justice and public policy, in relation to the currency of the coun- try, and its credit and good faith, which it is deemed unnecessary to give at length here, as they must naturally suggest themselves to the Court.

The whole context of this 27th section furnishes another and very strong argument in relation to the defendant's first point, that the proceedings under this act were never intended to be in the nature of bankrupt or insolvent proceedings ; or, surely, some pro- vision would have been made for the mass of the creditors, and

the whole property and assets of the Bank would not have been restored to the possession and management of the stockholders on the circulation and deposites being secured, if such was the intention of the Legislature. The Judge of the District Court in his reasons for the judgment rendered by him, appears to have based his judgment merely on the supposed inapplicability of the proviso in the 1st section of the act of the 26th of March, 1842. See laws of 1842, page 454. We agree with the Judge if he means to say, that this particular case is not provided for in terms; but we cannot but think that it affords a very strong argument in support of our position, and shows, very clearly, the continued solicitude of the Legislature for the holders of the notes of the Bank in circulation, and a strong disposition to accomplish their speedy redemption by compensation, or in discharge of debts due the Bank.

In the Court below the act of the 5th of April, 1843, is got rid of, because it was passed after this suit was brought. The facts are these: This suit was instituted on the 4th day of April, 1843. The act was passed on the 5th of April, 1843, and was promulgated on the 11th day of April. The defendants' answer was filed on the 1st day of May, 1843. The law was in full force before issue joined.

And we are not aware of any principle of law, or statutory provision, which excludes suits pending from the operation of a statute, which does not impair the obligation of the contract it seeks to enforce; and, although we think that we do not stand in need of the statute of 1843 to support our defence, yet we cannot help thinking that we are entitled to the benefit of it.

The 2d section is full to our purpose. It applies to all banks, whether in liquidation or not.

It cannot be confined to property banks: 1st, because its language is general and its meaning clear; 2d, because the Legislature could not mean to grant such a privilege to the debtors of banks, for whose capital the state was bound, and deny it to those of the banks in which it had no interest, or liability, and which, under the provision of the 27th section of the act of the 14th of March, 1842, might revert to, and remain under the management and administration of their own stockholders.

MORPHY, J.   This suit is brought to recover $6500, being the amount of two months' rent of the property known under the name of the St. Charles Hotel, which the defendants occupy under a lease from the Exchange and Banking Company, bearing date the 20th of April, 1840.   By this lease, which is for the term of five years, the defendants bind themselves to pay rent at the rate of $26,000 per annum, payable in eight monthly instalments, commencing on the 10th day of November, and ending on the 10th day of July in each year.   The rent sued 'for is alleged to have accrued between the 10th of January, and the 10th of March, 1843.   The defence is, that at the time the rent claimed became due, the defendants were, and still are the holders and owners of certain notes or obligations in writing of the Exchange and Banking Company, commonly called bank notes, issued by the said Bank under and by virtue of its charter, and which did, and now form a part of its circulation, to an amount equal to the rent demanded, which notes the defendants annex to their answer, and plead in compensation to the claim of the petitioners, to whom the said notes were tendered in payment, and who refused to receive them.   There was below a judgment in favor of the plaintiffs, from which this appeal has been taken.

The plea of compensation set up by the defendants is resisted on the ground of the presumed insolvency of the Bank from the fact of its having been placed in liquidation, on the 15th of March, 1842, by virtue of a decree of the District Court of the First District.   This presumption seems to be drawn from the different clauses of the act providing for the liquidation of banks, which in many respects assimilate the powers, duties and liabilities of the commissioners to be appointed, to those conferred or imposed on syndics of insolvent estates, and prescribe the same proceedings as those provided by the acts relative to the voluntary surrender of property.   From the provisions of the act of 1842, it does not follow, that a bank which goes voluntarily, or is forced into liquidation, is, as a matter of course, to be considered insolvent.   It may forfeit its charter by violating some of its provisions, without being in a state of legal insolvency, i. e., without being unable to pay its debts.   Were the insolvency of a bank to be presumed in all cases of voluntary or forced liquidation,

the presumption, in many instances, would be contrary to the true state of the case. Two of our real estate banks have forfeited their charters and been forced into liquidation, for having suspended specie payments, or otherwise violated their charters. Although in winding up their affairs the stockholders may sustain heavy loses, it cannot be said that these banks are insolvent; and there are but few who doubt their ultimate ability to pay all their debts. In the present case, the record does not inform us whether the stockholders of the Exchange and Banking Company have paid up the full amounts of their subscriptions. It is only when the whole amount of the capital stock of a bank, together with its assets, is insufficient to meet its liabilities, that a bank can be said to be insolvent. However this may be, there is no evidence whatever before us of the insolvency of the Exchange and Banking Company, save the presumption relied on by the petitioners, but which, in our opinion, does not necessarily result from the mere fact of its having been put in liquidation. In no part of the law of 1842, is the insolvency of a bank contemplated as a cause for the forfeiture of its charter, or for placing it in forced liquidation.

The first section of that act declares, " that whenever any bank of this State, located in the city of New Orleans, by any *act, omission, or violation of law*, shall have incurred the forfeiture of its charter," &c., referring generally to any violation of its charter, which may take place although the bank have ample means of meeting ultimately all its liabilities. The 26th section provides, that " as soon as the commissioners shall have paid off all the debts of the corporation committed to their charge, they shall distribute any balance that may remain in their hands among the stockholders thereof, rateably, according to the number of shares held by each," &c. The above and other provisions of the law of 1842, show, that it was not contemplated by the Legislature that the banks placed in liquidation would, in all cases, be insolvent, and that they should be treated as such. The fact of insolvency may or may not exist when a bank forfeits its charter, and is, in consequence thereof, placed in a state of liquidation. Until such insolvency is shown, there can be no good reason why all debts due to such a corporation should

not be compensated with, and extinguished by its obligations, or notes, held by its debtors. It was probably to obviate all difficulty on this subject, that the same Legislature which passed the law took occasion to provide, in an act passed at the same session, (Acts of 1842, page 454,) " that nothing contained in the act to provide for the liquidation of banks, or other laws of the State, shall be so construed as to deny to any persons having notes to pay in banks in liquidation, the right of paying said notes in the bank notes of said liquidating banks." From this provision it might be inferred that the Legislature did not consider the banks put in liquidation in the light of declared and actual insolvents, otherwise they would have created a privileged class of creditors, by giving to persons holding their notes, the right of paying with them *at par*. Although this law speaks only of *notes*, into which form almost all the debts to banks are thrown, a liberal and fair construction should extend it to all debts due to the banks not evidenced by notes. If, in the present case, the Exchange Bank had taken the defendants' notes for the several instalments of the lease, as we understand is frequently done, the right of the latter to pay them in the notes of the Bank could not be questioned. The accident of no notes having been required by the Bank, should not, perhaps, deprive the defendants of this right. But whatever doubts may have been entertained in consequence of the words of this proviso, they have been removed by the Legislature by inserting in a law of the 5th of April, 1843, a provision which may be considered as declaratory of their former intention. This provision is to be found in the second section of the last mentioned act, and is in the following terms : " It shall be the duty of each of the banks of the State, at all times, to receive in offset, or part offset of *debts* due to it, its own debts when liquidated or past due, whether for circulation, deposites, or arising from any other source whatever, and whether such banks *be or be not in liquidation*, and without reference to the date at which the debtor offering such tender may have acquired the claim by him offered in offset." The terms of this law are general, and apply to all the banks of the state, whether in liquidation or not, to those which still retain their charters, as well as to those which have lost theirs, and are in a train of liquidation. These provisions of law, while

they protect and uphold the circulation of the liquidating banks, which was in some degree a duty on the part of the State under whose sanction it had become a part of the currency of the country, tend greatly to facilitate their liquidation, and to produce ultimate solvency, by inducing many to pay debts which would otherwise perhaps have been lost to the banks. The plea of compensation should, we think, have prevailed.

It is, therefore, ordered that the judgment of the District Court be avoided and reversed; and proceeding to render such judgment as, in our opinion, should have been given below, it is further ordered and decreed that compensation be, and it is hereby allowed, to the amount of the rent claimed, on a surrender being made to the petitioners, of the bank notes tendered to them by the defendants. The costs of both courts to be paid by the plaintiffs and appellees.

---

## SAME CASE—ON A RE-HEARING.

No law of this State in existence before 1842 defined the insolvency of a corporation, or provided for its voluntary or forced liquidation. The acts of the 14th, and 26th March, 1842, and 5th April, 1843, apply alike to solvent and insolvent banks, and whether their liquidation be forced or voluntary. They are special laws, for special purposes, and are to be construed together, as *in pari materia*. To them alone, we must look for the mode of proceeding, and for the powers and duties of the commissioners of liquidation. The Legislature intended by these acts to provide specially for the holders of the notes of the banks in the course of liquidation, and to make the circulation of each bank a good offset to debts due to it. These statutes made it the duty of the commissioners to allow such offsets, and they violate no vested right, nor impair the obligation of any contract.

BULLARD, J. A re-hearing was granted in this case, and we have attentively considered the arguments urged against the opinion first pronounced by this court, allowing the compensation.

It is said that the Bank was insolvent, and that the insolvency is abundantly shown by the record, and is, indeed, notorious; and

that the administration of the liquidating banks is to be conducted in the same way as in cases of ordinary insolvency.

To this we may answer, that no law of this State existed previously to the year 1842, which defined the insolvency of a corporation, or provided for either its voluntary or forced liquidation. We are not informed by any law what shall constitute the insolvency of a bank or other joint stock incorporated company ; and no mode of liquidating corporations was established by law previous to the acts of 1842 and 1843, which apply alike to solvent and insolvent banks, and whether the liquidation be forced or voluntary. We are, therefore, to look to those acts, and to them alone, for the mode of proceeding, and for the powers and duties of the commissioners. They are special laws, for special purposes, and are all to be taken and construed together, as laws *in pari materia.*

The 24th section of the act of 1842, entitled "an act to provide for the liquidation of banks," declares, "that in all matters *not herein specially provided for,* the powers, duties and liabilities of the commissioners shall be the same as those conferred or imposed on syndics of insolvent estates, and the proceedings the same as those provided by the acts now in force relative to the voluntary surrender of property."

Now the act approved March 26th, 1842, entitled, "an act to amend an act entitled an act relative to the banks of this State," &c., contains a remarkable exception to the rule which governs the administration of insolvent estates. It provides that nothing contained in the act to provide for the liquidation of banks, or other laws of the State, shall be so construed as to deny to the persons having notes to pay in banks in liquidation, the right of paying said notes in the bank notes of said liquidating banks, except when said notes may have been transferred to the other banks as security for receiving the circulation."

The second section of the act of 1843, (approved April 5th,) entitled an act to facilitate the liquidation of the property banks, &c., extends this exception still further, and makes it the duty of each of the banks of the State, at all times, to receive in offset or part offset of debts due to it, its own debts when liquidated and past due, whether for circulation, deposites, or arising from any

other source whatever, and whether such banks be or be not in liquidation, and without reference to the date at which the debtor offering such tender may have acquired the claim by him offered in offset.

These actions contain other exceptions to the rule which prevails in the administration of insolvent estates. The 18th section, for example, provides that whenever a distribution is to be made by the commissioners, they shall make a reservation of funds equal to one-third of the amount of the outstanding notes in circulation for at least one year after the filing of the tableau, exclusive of the notes held by banks bound to take up a part of the notes of the liquidating banks.

It appears to us, therefore, clear, that the Legislature intended to make special provision for the bill holders, and to make the circulation of the bank always a good offset to debts due to the liquidating banks. The justice or policy of particular laws does not concern the judicial department; but it would appear but just, that those who had received bank notes as money, under the sanction of the Legislature, should be particularly favored.

The objection that the law is retroactive, would have more force, perhaps, if urged by other creditors of the bank. As it relates to the ·commissioners, it is enough to say, that the statutes make it their duty to allow the offset, and that they violate no vested right, and do not appear to us to impair the obligation of contracts.

The judgment rendered remains undisturbed.